UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

KEVIN MINLEY,

        Plaintiff,

v.

CAROLYN PIERCE et al.,

        Defendants.
_____/

Case No. 2:19-cv-153

Honorable Paul L. Maloney

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez,* 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant Pain Management Committee Unknown Part(y)(ies) #1.

## **Discussion**

### **I.**     **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Gus Harrison Correctional Facility (ARF) in Adrian, Lenawee County, Michigan.

The events about which he complains, however, occurred at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues Optometrist Carolyn Pierce, Registered Nurse Sue Howard, Corizon Health, Inc. (Corizon), MDOC Pain Management Committee Unknown Part(y)(ies) #1, Utilization Manager Unknown Part(y)(ies) #2, and Regional Medical Director Unknown Part(y)(ies) #3.

Plaintiff alleges he suffers from bilateral Primary Open-Angle Glaucoma (POAG). (Compl., ECF No. 1, PageID.4; Ex. A, ECF No. 1-1, PageID.28.) His right eye has been in the severe stages of the condition since at least July 10, 2018. (Compl., ECF No. 1, PageID.4; Ex. A, ECF No. 1-1, PageID.28.) Plaintiff also suffers from cataracts in his right eye. (Ex. A, ECF No. 1-1, PageID.29.)

Plaintiff has received care for POAG from an offsite specialist physician, Dr. John McManus. (Compl., ECF No. 1, PageID.4.) On January 3, 2018, Dr. McManus prescribed COSOPT eye drops to treat Plaintiff's POAG. (*Id.*) On January 23, 2018, Plaintiff kited MDOC Health Care requesting a refill of his COSOPT prescription. (*Id.*) Defendant Howard responded that the eye drops were on back order from the contract pharmacy "Pharm Corr." (*Id.*) Several days later, Plaintiff again kited MDOC Health Care requesting a refill for his prescription indicating he was experiencing pain and blurred vision without his eye drops. (*Id.*) Defendant Howard again responded, informing Plaintiff of a nationwide shortage of the medication. (*Id.*) On January 29, 2018, Plaintiff filed a grievance, and a one-month supply of eye drops were obtained from an offsite pharmacy on February 2—the same day of the grievance's receipt. (Compl., ECF No. 1, PageID.4-5; Ex. C, ECF No. 1-1, PageID.50-51.)

Shortly thereafter, Plaintiff alleges Defendant Howard[1] placed a stop order discontinuing the COSOPT eye drops and replacing with AZOPT eye drops, which Defendants Corizon and MDOC Pain Management Committee approved on February 9, 2018. (Compl., ECF No. 1, PageID.5). On March 17, 2018, when Plaintiff first used AZOPT, he immediately suffered "intense pain, burning, redness and increased eye pressure." (*Id.*) Plaintiff "notified [D]efendants" of the side effects and requested COSOPT, and Defendants did not immediately respond. (*Id.*) On March 21, 2018, Plaintiff met with Defendant Pierce who discontinued AZOPT but provided nothing in its place. (*Id.*)

Thereafter, Plaintiff "kited [D]efendants" over a span of nearly two months informing of his pain and worsening vision. (*Id.*) On May 3, 2018, Plaintiff was called to Health Care and received a refill of COSOPT eye drops. (*Id.*) Plaintiff explained "his symptoms and severe pain to D[e]fendant Howard." (*Id.*) Plaintiff's intraocular pressure registered an 18/19, and Plaintiff was referred to Dr. McManus for evaluation. (*Id.*)

Dr. McManus informed Plaintiff that "vision loss from nerve damage or due to glaucoma cannot be restored." (*Id.*) Dr. McManus further recommended treatment of Plaintiff's cataracts for proper evaluation and care of Plaintiff's POAG. (*Id.*; Ex. A, ECF No. 1-1, PageID.29.) Consequently, Defendant Pierce recommended cataract surgery for Plaintiff to Defendant Pain Management Committee citing Dr. McManus' recommendation. (Compl., ECF No. 1, PageID.5; Ex. B, ECF No. 1-1, PageID.31.) Plaintiff alleges that Defendant Unknown Utilization Manager cited an MDOC policy to refuse Plaintiff's cataract surgery until Plaintiff's vision worsened to 20/70. (Compl., ECF No. 1, PageID.6.) Defendant Pierce appealed the

---

[1] Although Plaintiff alleges Defendant Howard placed the stop order, Defendant Pierce is identified in Exhibit B as stopping COSOPT and starting AZOPT. (Ex. B., ECF No. 1-1, PageID.43.)

decision, but Defendant Unknown Regional Medical Director upheld the policy and its application. (*Id.*)

On January 15, 2019, Dr. McManus wrote in his report to MDOC Health Care, "I continue to recommend cataract surgery." (Ex. A, ECF No. 1-1, PageID.17.) Dr. McManus continued, "I believe this is medically necessary for appropriate glaucoma care." (*Id.*)

Plaintiff asserts two claims. First, Plaintiff alleges Defendants deprived him of medical care by failing to properly provide his prescription COSOPT eye drops. Second, Plaintiff alleges Defendants deprived—and continue to deprive—him of medical care for his POAG by denying cataract surgery. Plaintiff alleges that deprivation of medical care resulted in pain, lost vision, blurred vision, headaches, optical nerve damage, and optical disk damage.

Plaintiff seeks compensatory, punitive, and exemplary damages.

## II.  Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at

678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Here, Plaintiff asserts Eighth Amendment claims against all defendants under a theory of deprivation of medical care.

### A. MDOC Pain Management Committee

Plaintiff may not maintain a § 1983 action against the MDOC Pain Management Committee. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has

specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See*, *e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010). In addition, the State of Michigan (acting through the Michigan Department of Corrections and its divisions) is not a "person" who may be sued under §1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771. The Pain Management Committee is simply a subdivision of the MDOC. Therefore, the Court dismisses the MDOC Pain Management Committee.

### B. Eighth Amendment Claims

Plaintiff's claims against remaining Defendants Pierce, Howard, Corizon, Unknown Utilization Manager, and Unknown Regional Medical Director arise under the Eighth Amendment for depriving him of medical care.

The Eighth Amendment prohibits the imposition of "cruel and unusual punishments" upon prisoners. U.S. Const. amend. VIII. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton infliction of pain are those that are "totally without penological justification." *Id.*

The Eighth Amendment limits the power of the states to punish those convicted of crimes by depriving them of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954

(6th Cir. 1987). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted).

In order for a prisoner to prevail on an Eighth Amendment deprivation claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

### 1. COSOPT Eye Drops

Plaintiff alleges Defendants Pierce and Howard acted with deliberate indifference to his medical needs in acquiring his COSOPT prescription eye drops. Defendants failed to provide the eye drops on several occasions during the first five months of 2018. As a result, Plaintiff went without his prescribed therapy for approximately six weeks and had increased intraocular pressure by the time his prescription was refilled. Moreover, while the COSOPT prescription may have been backordered at MDOC's preferred pharmacy, Plaintiff demonstrated that it could be refilled and available within a day from an offsite pharmacy. Upon initial review, therefore, the Court concludes that Plaintiff's allegations are sufficient to state an Eighth Amendment claim against Defendants Pierce and Howard for depriving Plaintiff of medical care.

### 2. Cataract Surgery for POAG Care

Plaintiff further alleges Defendants Corizon, Unknown Utilization Manager, and Unknown Regional Medical Director have deprived him and continue to deprive him of proper care for his POAG. Defendants have deferred Plaintiff's cataract surgery citing an MDOC policy requiring that corrected vision first deteriorate to 20/70 before granting authorization for the

procedure.  Plaintiff contends Defendants have been deliberately indifferent in "maintaining the policy" despite it leading to an "inability to care for [his] glaucoma."  Upon initial review, the Court concludes that Plaintiff's allegations are sufficient to state an Eighth Amendment claim against Defendants Corizon, Unknown Utilization Manager, and Unknown Regional Medical Director for depriving Plaintiff of medical care.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendant Pain Management Committee Unknown Part(y)(ies) #1 will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  Plaintiff's Eighth Amendment claims against Defendants Optometrist Carolyn Pierce, RN Sue Howard, Corizon, Utilization Manager Unknown Part(y)(ies) #2, and Regional Medical Director Unknown Part(y)(ies) #3 remain in the case.

An order consistent with this opinion will be entered.


Dated:   October 25, 2019                              /s/ Paul L. Maloney
                                                      Paul L. Maloney
                                                      United States District Judge