UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KEVIN MINLEY #203987,

    Plaintiff,

v.

CAROLYN PIERCE, et al.,

    Defendants.
_____/

Case No. 2:19-cv-00153

Hon. Jane M. Beckering
U.S. District Judge

**REPORT AND RECOMMENDATION**

**I.   Introduction**

This Report and Recommendation (R&R) addresses the summary judgment motions filed by the three remaining Defendants Corizon Health, Inc. (Corizon), Dr. Keith Papendick, and Dr. Patricia Schmidt.   (ECF No. 105.)

The Plaintiff in this case – state prisoner Kevin Minley – filed this civil rights action pursuant to 42 U.S.C. § 1983.   He alleges that his rights were violated while he was confined at the Chippewa Correctional Facility (URF).   (ECF No. 6, PageID.77.)   Plaintiff's amended complaint alleges that his Eighth Amendment rights were violated, and he suffered with vision deterioration because Defendants denied him medical care for glaucoma and cataracts.[1]   (ECF No. 74.)

---

[1]   The Court dismissed Defendants Pain Management Committee and Unknown Part(y)(ies) #1 on October 25, 2019.   (ECF Nos. 6 and 7.)   The Court accepted the stipulation to dismiss Defendant Dr. Pierce on February 3, 2021.   (ECF Nos. 70 and 71.)   And on July 22, 2021, the Court accepted the stipulation to dismiss Defendant

1

Defendants Dr. Papendick and Dr. Schmidt argue in their motion that Minley was not denied medical care and that they did not violate his Eighth Amendment rights. Defendant Corizon argues that Minley has failed to show that a Corizon custom or policy violated his Eighth Amendment rights. Minley has not responded.[2]

It is respectfully recommended that the Court grant Defendants' motion for summary judgment and dismiss this case.

---

Howard. (ECF Nos. 98 and 99.)

[2] On July 29, 2020, the Court appointed attorney Dan Manville, of the Michigan State University College of Law Civil Rights Clinic, to represent Minley. (ECF No. 32.) On October 24, 2021, after discovery ended and Defendants filed a motion for summary judgment, attorney Manville moved to withdraw citing a breakdown in the attorney client relationship. (ECF No. 110.) On October 29, 2021, Minley filed a *pro se* motion to appoint new counsel and attached correspondence with counsel showing that there was a breakdown in the attorney/client relationship. (ECF No. 113.) On November 15, 2021, the Court held a hearing on this matter. The Court granted the motion to withdraw and indicated that it would request new counsel, if possible. (ECF No. 117.) On November 16, 2021, the Court issued an order requiring Minley to provide current medical information to assist the Court in determining whether counsel should be appointed. (ECF No. 119.) On December 15, 2021, the Court held a hearing. The Court indicated that it would attempt to appoint Minley a new attorney but explained that it may be difficult to find an attorney. (ECF No. 122.) The Court issued an order holding the Summary Judgment motion in abeyance. (ECF No. 123.) On March 21, 2022, the Court held a telephone conference and informed the parties that an attorney could not be found to represent Minley. (ECF No. 128.) Minley advised the Court that he wished to engage in settlement negotiations with Defendants. (ECF No. 128.) The Court gave the parties two weeks to discuss settlement and advised the parties that a briefing schedule would be set if the case could not settle. (*Id.*) The Court entered an order denying Minley's motion for new counsel. (ECF No. 129.) On April 4, 2022, Defendants provided notice to the Court that the case would not settle. (ECF No. 130.) On April 19, 2022, the Court issued a briefing schedule requiring Minley to file his response to the Summary Judgment motion by May 23, 2022. (ECF No. 131.)

## II. Factual Allegations

Minley says that he is being treated with COSOPT eye drops for cortical cataracts and Primary-Angle Glaucoma. (ECF No. 74, PageID.400.) Minley says that he was diagnosed with Primary Open-Angle Glaucoma (POAG) in both eyes, and that his right eye has been in severe stages since July 10, 2018. (*Id.*) Minley alleges that Defendants have denied him POAG and cataract medical care. (*Id.*)

Minley asserts that on September 20, 2017, he was prescribed COSOPT medication for his eyes with an expiration date of January 20, 2018. (*Id.*, PageID.401.) On January 25, 2018, after Minley requested a refill of COSOPT, he was informed that it was on back order due to a nationwide shortage. (*Id.*) On February 2, 2018, Minley received a one-month supply of COSOPT. (*Id.*) On February 9, 2018, a request for a change of medication was approved for AZOPT. (*Id.*, PageID.402.) When Minley first used AZOPT on March 17, 2018, he experienced "intense pain, burning, redness, and increased eye pressure." (*Id.*) Minley asserts that he did not receive an immediate response to his request to discontinue his AZOPT prescription, but on March 21, 2018, the AZOPT drops were discontinued without any replacement. (*Id.*) On May 3, 2018, Minley was called to the pharmacy to pick up his COSOPT eyedrops. (*Id.*, PageID.403.)

Minley says that he was examined by Dr. McManus, who informed him on July 19, 2018, that his vision loss from nerve damage and glaucoma cannot be restored and that his field of vision was affected by cataracts. (*Id.*) Minley asserts that Dr.

McManus told him that he would need cataract surgery for proper care for his glaucoma. (*Id.*)

Minley says that cataract surgery was refused by Dr. Papendick who stated it was not medically necessary. (*Id.*, PageID.404.) Minley alleges that Dr. Papendick's refusal to provide cataract surgery was based upon Corizon policy which required 20/70 vision or worse. (*Id.*) Minley appealed the denial of surgery to Dr. Schmidt, who denied the appeal on August 2, 2018. Minley alleges that if left untreated his cataracts could cause total blindness.

The remaining claims are against Defendants Corizon, Dr. Papendick, and Dr. Schmidt for the failure to provide Minley with surgery to correct his cataracts and glaucoma.

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party

4

opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005). "When the non-moving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist." *Davis v. Cox*, No. 2:18-cv-11255, 2019 WL 1783066, at *3 (E.D. Mich. Mar. 29, 2019), *report and recommendation adopted,* No. 18-11255, 2019 WL 1778840 (E.D. Mich. Apr. 23, 2019)

## IV. Eighth Amendment

### A. Legal Standards

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as the failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* "[A]n

5

inmate who complains that ***delay in medical treatment*** rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier v. Madison Cty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001) (emphasis added, citations omitted). The Court of Appeals elaborated on the holding in *Napier* in its 2004 ruling in *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890 (6th Cir. 2004), where the Court stated the following:

> *Napier* does not apply to medical care claims where facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers. *Napier* applies where the plaintiff's "deliberate indifference" claim is based on the prison's ***failure to treat a condition adequately***, or where the prisoner's affliction is seemingly minor or non-obvious. In such circumstances, medical proof is necessary to assess whether the delay caused a serious medical injury.

*Blackmore*, 390 F.3d at 898 (emphasis added). Thus, *Napier* and *Blackmore* provide a framework for assessing a claim of delayed or inadequate care for a non-obvious condition: A plaintiff making this type of claim must place verifying medical evidence in the record to show the detrimental effect of the delayed or inadequate treatment.

However, the objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore*, 390 F.3d at 899.

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835,

6

but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. The subjective component was recently summarized in *Rhinehart v. Scutt*, 894 F.3d 721 (6th Cir. 2018). The court of appeals stated the following:

> A doctor's errors in medical judgment or other negligent behavior do not suffice to establish deliberate indifference. Instead, the plaintiff must show that each defendant acted with a mental state "equivalent to criminal recklessness." This showing requires proof that each defendant "subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk" by failing to take reasonable measures to abate it.
>
> A plaintiff may rely on circumstantial evidence to prove subjective recklessness: A jury is entitled to "conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." And if a risk is well-documented and circumstances suggest that the official has been exposed to information so that he must have known of the risk, the evidence is sufficient for a jury to find that the official had knowledge.
>
> But the plaintiff also must present enough evidence from which a jury could conclude that each defendant "so recklessly ignored the risk that he was deliberately indifferent to it." A doctor is not liable under the Eighth Amendment if he or she provides reasonable treatment, even if the outcome of the treatment is insufficient or even harmful. A doctor, after all, is bound by the Hippocratic Oath, not applicable to the jailor, and the physician's job is to treat illness, not punish the prisoner. Accordingly, when a claimant challenges the adequacy of an inmate's treatment, "this Court is deferential to the judgments of medical professionals." That is not to say that a doctor is immune from a deliberate-indifference claim simply because he provided "some treatment for the inmates' medical needs." But there is a high bar that a plaintiff must clear to prove an Eighth Amendment medical-needs claim: The doctor must have "*consciously* expos[ed] the patient to an *excessive* risk of *serious* harm."

*Id.* at 738–39 (6th Cir. 2018) (internal citations omitted).

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted).

Differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute

is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *Rouster v. Saginaw Cty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell* 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

**B. Analysis**

Defendants first argue that Minley cannot meet the objective component of an Eighth Amendment claim because his need for treatment is not so obvious that a lay person would easily recognize the need. Nevertheless, it is undisputed that Minley had cataracts and glaucoma. Minley is arguing that due to the delay in providing him treatment, he suffered unnecessary vision loss. *Cobbs v. Pramstaller*, 474 Fed. Appx. 575, 580 (6th Cir. 2012) (allegation that four-year delay in receiving cataract surgery caused injury, despite regularly seeing optometrists and ophthalmologists

9

during the period, was sufficient to show a serious need for medical treatment). "The Sixth Circuit has recognized that glaucoma is sufficiently serious to satisfy the objective component of a deliberate indifference claim." *Lyles v. Pierce*, 2:21-cv-255, 2022 WL 29255, *7 (W.D. Mich. Feb. 1, 2022) (finding that a prisoner with glaucoma and cataracts has a serious medical need for treatment under the Eighth Amendment). In the opinion of the undersigned, viewing the facts in the light most favorable to Minley, Minley has asserted a serious need for medical care and treatment.

Defendants argue that Minley has failed to support the subjective component of his Eighth Amendment claim by showing that they were deliberately indifferent to his vision needs. A review of the medical records demonstrates that Minley has a disagreement with his medical providers, which, as noted above, is not sufficient to establish a genuine issue of material fact as to the subjective component of his deliberate indifference claim. The records show that Minley received extensive eye care and treatment, but that surgery was not medically necessary. On May 3, 2018, Dr. Carolyn Pierce, O.D., Minley's regular optometrist at the prison, requested that Minley receive an Ophthalmology examination.[3] (ECF No. 107, PageID.238-239.)[4] The request was approved.

---

[3] Dr. Pierce made requests using a consultation form known as a "407." (ECF No. 105-6, PageID.661 (Deposition of Dr. Papendick).) The request would go to Dr. Papendick, who would approve or disapprove of the request. (*Id.*)

[4] The Court denied Defendants' motion to seal ECF Nos 107 and 108. (ECF No. 109.)

On July 10, 2018, Minley was examined by Ophthalmologist Dr. McManus. Dr. McManus recommended a cataract evaluation and indicated that Minley was a good candidate for "phaco/MIGS" surgery (phaco is short for phacoemulsification which is cataract surgery, and MIGS surgery is a procedure to reduce interocular pressure (IOP)). (ECF No. 108, PageID.1653.) Minley had 20/20 vision in both eyes. (*Id.*, PageID.1651.)

On July 12, 2018, Dr. Pierce made a request for a cataract evaluation for Minley's right eye and for phaco/MIGS surgery. (ECF No. 107, PageID.991-992.) Dr. Papendick reviewed the request and determined that Minley had 20/20 vision and that no medical necessity supported the request. (*Id.*, PageID.993.) Dr. Papendick recommended an alternate treatment plan. (*Id.*)

On July 30, 2018, Dr. Pierce met with Minley and informed him that the request was denied but that she would appeal the decision. (*Id.*, PageID.999.) Dr. Pierce emailed Dr. Schmidt who responded that she "will do the best of my ability to request appeal and see if it goes through." (ECF No. 105-5, PageID.654.) On August 2, 2018, Dr. Schmidt informed Dr. Pierce by email that because Minley had 20/20 vision, there was no medical necessity for cataract surgery and the committee would deny an appeal without additional information. A portion of that email is shown below.

> Dr Pierce,
> I can truly appreciate the concern present, and yet in reviewing your alternate treatment plan for medical necessity  the driving for for cataract surgery is BCBVA  and in all notes this value is 20/20, until there is more significant change on exam, and readings, the criteria for surgery at this time is not met.  If I send for appeal, I will just be sending the same things you sent and the review committee will decline the appeal and up hold the ATP.
>
> Please continue to monitor as you are already doing at this time.
>
> Thanks much.
> Patricia Schmidt, DO

(*Id.*, PageID.656.)

On September 6, 2018, Dr. Pierce checked Minley's IOP and found that his right eye IOP was 15 and that his left eye IOP was 16.   (ECF No. 107, PageID.1008.) She noted that the target was 14 or less in both eyes.[5]  (*Id.*, PageID.1007.)  Dr. Pierce made a request for a follow-up with Ophthalmology to consider possible selective laser trabeculoplasty (SLT) (glaucoma surgery used to create a channel in the eye to reduce pressure) in both eyes.  (*Id.*, PageID.1005.)  Dr. Papendick approved that request.   (*Id.*, PageID.1011.)

On October 3, 2018, Dr. McManus examined Minley and found that his right eye IOP was 14 and that his left eye was 15.  (ECF No. 108, PageID.1648.)  Dr. McManus noted that the IOP goal was mid to low teens and Minley had not been above target since January of 2018.  (*Id.*)  Dr. McManus found that SLT was not needed at that time and suspected that Minley's complaint of worsening vision was

---

[5]     Dr. Pierce testified that the target pressure goal for Minley was around 17 or 18, and that his right eye was in the moderate range and his left eye was in the mild range.   (ECF No. 105-3, PageID.625 (Dr. Pierce's deposition).)

because of his cataract in his right eye. (*Id.*) Dr. McManus's notes from that day are shown below.

| Ophthalmology Impression/Plan | | |
|---|---|---|
| # | Detail Type | Description |
| 1. | Assessment | Primary open-angle glaucoma, right eye, severe stage (H40.1113). |

Minley, Kevin  000000052941            10/03/2018 11:15 AM Page: 5/6

| | | |
|---|---|---|
| | Impression | Primary open-angle glaucoma, right eye, severe stage: H40.1113. |
| | Plan | IOP today 14/15 by applanation, pachys around 570, reports good compliance with drops<br>On latanoprost HS/HS, brim 3/3, cosopt 2/2<br>See notes from Aug 2016, Jan 2018 - goal IOP mid to low teens - seems very stable at this regimen<br>IOP has not been above target and I do not have any recent fields (last Jan 2018) that show progression<br>Thus, I do not think SLT is needed at this time - only rationale woudl be for drop sparing... and pt reports good compliance and good tolerance<br>Indication for SLT would be if IOP was living around high teens or above, or if field got worse<br><br>I discussed these things with the pt. He feels vision getting worse OD. I don't disagree... but I suspect the cataract is likely the bigger portion.<br>We decided not to do SLT today<br>If approproved, I'd like to do a HVF OU, dilated exam OU, MRx/BAT at next visit |
| 2. | Assessment | Primary open-angle glaucoma, left eye, mild stage (H40.1121). |
| 3. | Assessment | Cortical cataract of right eye (H26.9). |
| | Impression | Cortical cataract of right eye: H26.9. |
| | Plan | I continue to believe that CORT cataract in right eye is dense enough to be symptomatic and dense enough to inhibit his ability to perform a good field test<br>I continue to recommend cataract evaluation |

(*Id.*, PageID.1647-48.)

On October 15, 2018, Dr. Pierce requested a cataract examination. (ECF No. 107, PageID.1037.) Dr. Papendick approved that request the next day. (*Id.*, PageID.1044.)

Dr. Papendick explained that he would authorize cataract surgery if Minley's acuity was worse than 20/60, and he would authorize surgery for glaucoma if Minley

13

was taking four drops of medication and his glaucoma was not under control.[6] (ECF No. 105-6, PageID.663 (Dr. Papendick deposition).) The request for Minley was to perform both surgeries at the same time. (*Id.*) Minley did not meet any of the qualifying factors necessary for the surgeries. (*Id.*)

Minley has failed to place any evidence in the record that would create a genuine issue of material fact regarding whether the Doctors were deliberately indifferent to Minley's serious medical needs. Based on the record before the Court, Dr. Papendick and Dr. Schmidt made appropriate decisions regarding Minley's eye care and treatment. At best, Minley has asserted a difference in opinion regarding his treatment. But a difference of opinion regarding treatment of a medical condition fails to establish a genuine issue of material fact with respect to a deliberate indifference claim under the Eighth Amendment.[7]

## V. Corizon

In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the United States Supreme Court held that municipalities could be subject to Section 1983 actions for alleged constitutional violations, albeit in a narrow set of circumstances. "A municipality may not be held liable under § 1983 on a *respondeat superior* theory

---

[6] Dr. Papendick relied on the Federal Bureau of Prisons criteria which provides that surgery is not required unless vision is 20/60 or worse. (ECF No. 105-6, PageID.664 (Deposition of Dr. Papendick), ECF No. 105-7, PageID.682 (Federal Bureau of Prisons Clinical Guidance).)

[7] Expert witness, Ophthalmologist Dr. Todd Lefkowitz, M.D., opined that Defendants did fall below the standard of care by not providing Minley with cataract surgery and by recommending that his care continue to concentrate on glaucoma treatment.

– in other words, '*solely* because it employs a tortfeasor.'" *D'Ambrosio v. Marino*, 747 F.3d 378, 388-89 (6th Cir. 2014) (quoting *Monell*, 436 U.S. at 691 (emphasis in original)). Instead, a municipality may only be liable under § 1983 when its policy or custom causes the injury, regardless of the form of relief sought by the plaintiff. *Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 35-37 (2010) (citing *Monell*, 436 U.S. at 694 (1974)).

In a municipal liability claim, the finding of a policy or custom is the initial determination to be made. *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996). The policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving,* 330 F.3d 802, 815 (6th Cir. 2003); *Doe*, 103 F.3d at 508–509.

"The principle is well settled that private medical professionals who provide healthcare services to inmates at a county jail qualify as government officials acting under the color of state law for the purposes of § 1983." *Winkler v. Madison Cty.*, 893 F.3d 877, 890 (6th Cir. 2018) (citing *Harrison v. Ash*, 539 F.3d 510, 521 (6th Cir. 2008)). Similarly, the delivery of health care by a private provider to state prisoners pursuant to a contract with the state constitutes actions under color of state law for purposes of Section 1983. *West v. Atkins*, 487 U.S. 42, 57 (1988). As a result, a *Monell* claim would be equally applicable against Corizon. And this Court has applied *Monell* liability to contract health care providers like Corizon. *See, e.g.*,

15

*Nobles v. Quality Correctional Care of Michigan, et al.*, No. 1:21-CV-199, 2021 WL 1827077, at *5 (W.D. Mich. May 7, 2021) (stating that "Corizon, like a governmental entity, may be held liable under § 1983 if it actually caused the constitutional deprivation").

To prove a deliberate indifference claim against Corizon, Plaintiff must show that "through its deliberate conduct, [Corizon] was the 'moving force' behind the injury alleged." *Allman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)). He must prove that Corizon had a "policy or custom" that caused a violation of her rights. *Monell*, 436 U.S. at 694.

A successful *Monell* claim can rest on one of four different theories of liability: (1) a clear and persistent pattern of unconstitutional conduct by contractor's employees, (2) the municipality's notice or constructive notice of the unconstitutional conduct, (3) the municipality's tacit approval of the unconstitutional conduct, such that its deliberate indifference in its failure to act can be said to amount to an official policy of inaction, and (4) that the policy of inaction was the moving force of the constitutional deprivation. *Winkler*, 893 F.3d at 902.

In the opinion of the undersigned, Minley has failed to identify an unconstitutional Corizon policy or custom to deny cataract surgery for prisoners who have glaucoma. The unrebutted evidence shows that such a policy or procedure does not exist. In the opinion of the undersigned, Minley has failed to present evidence establishing a genuine issue of material fact as to is Eighth Amendment claim against Corizon.

16

### VI. Recommendation

It is respectfully recommended that the Court grant Defendants' motion for summary judgment (ECF No. 105) and dismiss this case.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: July 26, 2022   /s/ *Maarten Vermaat*
MAARTEN VERMAAT
U.S. MAGISTRATE JUDGE